## Case No. 16,855.

### VAN HOOK v. WOOD.

[4 Betts, C. C. MS. 21.]

Circuit Court, S. D. New York.   Oct. 30, 1844.

PATENTS—ESTOPPEL BY COMPROMISE AGREEMENT—PRELIMINARY INJUNCTION—CONFLICTING VERDICTS IN OTHER CIRCUITS—ASSIGNMENTS—RENEWED PATENTS—PLANING MILLS.

[1. An arrangement made by two patentees, by way of compromise to avoid litigation, for the mutual use of their respective patents, should not be construed as an acknowledgment by either of the validity of the other's patent, so as to estop him or his assigns or licensees from denying its validity.]

[2. The federal courts regard a verdict in another circuit, when the validity of the patent was in issue, as prima facie evidence sufficient, if in favor of the patentee, to entitle him to an injunction, and, if against him, to defeat his application.]

[3. Where there were three verdicts in other circuits, two against and one in favor of the patentee, held, that the court would grant an injunction on the strength of the latter, it appearing that a new trial was denied after full argument and mature deliberation, whereas in the opposing cases there had yet been no hearing on motion for a new trial, and that there was good ground to suppose that the jurors misapprehended the court's instructions.]

[4. The extent to which assignees of a patent may enjoy a renewed patent is to be determined solely by the stipulations of the assignment.]

[5. Whether complainant will be required, as a condition of obtaining a preliminary injunction in a patent case, to give a bond to indemnify defendant in case the patent is not sustained, is a matter of practice, which each court may regulate at its discretion, conforming to the state procedure, or adopting an independent method for itself.]

[6. The Woodworth patent of November 27, 1828, renewed November 16, 1842, for a planing mill, construed on motion for a preliminary injunction, and held valid and infringed.]

[This was a bill by William Van Hook against Thomas W. Wood to enjoin the infringement of a patent. Heard on motion for a preliminary injunction.]

T. P. Staples, for complainant.

Stoughton & Harrington, for defendant.

BETTS, District Judge. The plaintiff, by his bill, claims to be the assignee of the entire interest for the city and county of New York in the patent granted to William Woodworth, December 27, 1828, and in its continuation or renewal, after his decease, to his administrator William W. Woodworth, for seven years, made November 16, 1842. He charges that he is in possession and use of the patented discovery, and that the defendant, in violation of his right, has set up, and is now using, two machines within the city of New York. Six interrogatories are appended to the bill, and the defendant's answers specifically to them is demanded. The defendant filed his answer, and in it denies, that he has ever at any time been in use of the improvements in the bill described, and also denies that he has constructed, repaired or purchased or brought into use any machine upon the plan of the complainant's, or containing any part of his alleged improvement. Several witnesses, Hammond, Cole and Roach, testify that the defendant is using two machines, which he obtained of Scudder & Dayton, and that they are substantially the same as the complainant's. Indeed, the defendant is to be taken as denying the use of the patentee's machines mainly upon the argument that his are made under and according to Emmons' patent, and that consequently he does not use the plaintiff's. The assertion is undoubtedly fortified by the farther one that Emmons' machine is different and distinct from that described in the plaintiff's patent, and that the latter cannot be brought to practical use. But supposing the proof establishes the substantial identity of the two machines, the fact of infringement, I think, is fully made out by the complainant.

The conclusion to which my mind is brought on the main points in contestation in this case does not render it indispensable that I should pronounce definitely upon the question whether Emmons' invention and patent supersedes that of Woodworth's; but, as much testimony has been produced by both parties on the subject, it may be appropriate in this connection to state that a careful consideration of the proofs on this point offered by the respective parties leads me to believe that Emmons had not previous to the invention and patent of Woodworth brought into use any discovery which interferes with that patent, nor had he, if his patent is the fruit of his own invention, followed up his discovery, and rendered it practical, so as to supplant the invention of Woodworth, by that patent taken out by him April 25, 1829. Kneass v. Schuylkill Bank [Case No. 7,875]; Whittemore v. Cutter [Id. 17,601]. The arrangement made by Woodworth with Emmons the 28th day of November, 1829, for the mutual use by the patentees (and their assigns) of the respective patents, and the assignment by Woodworth and Wilson, Dec. 14, 1830, of his right and interest under both patents, were urged on the part of the defendant as an estoppel to Woodworth and his assigns, denying the validity of Emmons' patent. But the arrangement between the patentees was manifestly a compromise to avoid litigation, and never intended and should not be construed to be an acknowledgment by either of the validity of the other's patent. The claimants under Emmons' patent could not be concluded by his accepting such a species of license under Woodworth's from denying the validity of the latter, nor can Woodworth or his assigns, for like cause, be placed in a more disadvantageous situation in respect to Emmons' patent; and I shall accordingly, in considering the objections to the plaintiff's right brought forward and urged in this case, lay out of view the discovery and patent of Emmons, and the subsequent arrangement between him and

Woodworth, unless the testimony shall be found to establish a substantial difference in the structure of the two kinds of machines, and that the defendant's machines embody only those differences.

Upon the merits of the case, the complainant founds his claim to the interference of the court by injunction on two general propositions: (1) That he is in possession and use of machines constructed conformably with the specifications of his patent; and (2) that the validity of the patent has been established by a verdict at law. The defendant meets the case, by maintaining: (1) That the patentee was not the first and original inventor of the machine patented. (2) That the same machine is described by Booth, in an English book (10 Repertory of Arts & Manufactures, published in the year 1799). (3) That the patentee surreptitiously appropriated the discovery of Dunbar. (4) That the specification is not reasonably certain, is ambiguous, and not sufficient to enable mechanics skilled in the business to construct from it a machine that will work. (5) That the specification claims the application of the machine to uses for which it will in no way answer. (6) That the patent is for an improvement in the cutters used in the machine, and that defendant never used them. (7) It is for various distinct improvements and inventions having no connection with each other, and void for that cause. (8) It is for an original invention, and not for a combination. (9) If it is for a combination, the patent is void, because no one single combination is claimed. On the contrary, it must necessarily claim three or more distinct combinations, each independent of the other, and complete in itself. (10) That the patent is not to be established by one verdict in its favor as to authorize an injunction, because on two other trials at law verdicts have been rendered against the patent, and in one other the plaintiff submitted to a nonsuit, and in another the jury were discharged because they could not agree. (11) That the extension of the patent to the administrator in 1842 was void, and consequently the patent is now expired. (12) If the extension is valid, it inures to the benefit of the assignees of the original patent, and the defendant as such is protected in its use in the city of New York. These general positions were ramified into numerous propositions of law and fact, and were supported and combatted by full and able arguments by the respective counsel. Thirty-two depositions were read by the complainant in support of his bill, and to rebut the proofs of the defendant, and forty-three depositions were read by the defendant to prove the patentee was not the original inventor, that the specification was ambiguous and insufficient, and that the defendant had not violated the patent right set forth on the specification. To this mass of evidence were added numerous documents, conveyances and agreements, supposed to bear on some of the points of the case. The reading of these papers and the argument occupied the whole sitting of the court for nine days.

It is not to be supposed that, in disposing of an interlocutory motion of the character of that now pending, the court will give the delay or bestow the same minute and critical examination upon the law and facts brought in review as if the proceeding called for a final judgment in the case, concluding the rights of the parties. When a fair prima facie case of infringement is presented by a patentee, courts of equity will protect his interest by injunction, until the right can be investigated and adjudicated on a trial at law, and not leave him to be ruined by the use of his discovery in hostility to him, whilst he is vindicating his right to it. Phil. Pat. 451; 9 Johns. 570. And an injunction will be granted although there be a conflict of affidavits as to the right. Brooks v. Bicknell [Case No. 1,944]; Van Hook v. Scudder [Id. 16,853], Thompson, Circuit Justice, 1843. This will be clearly so where there has been a verdict obtained in affirmance of the right of the patentee (1 Web. Pat. 471); and the United States circuit courts regard a verdict when the validity of the patent is in issue, obtained by a patentee in one circuit, as affording a prima facie case, sufficient to entitle him to an injunction in any other circuit, or to defeat his application where the verdict is against him. The validity of this patent has been repeatedly contested, and in various of the United States courts. The first trial was in this court, of October term, 1837; and after a full investigation of the facts, and it being announced by the court that the jury would be instructed that the specification described and claimed a combination of machinery for planing, turning, and grooving, and if they found the patentee's method in the application of circular saws for reducing floor plank and other materials to a width was known and in use before his discovery, and he described no new combination or contrivance for their use in his machine, his patent would be void for embracing more than he had a right to, the plaintiff thereupon submitted to a nonsuit. In October term, 1843, a feigned issue was tried in the Northern circuit of this state, before the district judge, in which all the objections now taken to the validity of the patent were raised, and a verdict was rendered for the defendants. Gibson v. Gould [Case unreported]. In November, 1843, a trial at law was had in the Western circuit of Pennsylvania, before the district judge, and there also a verdict was given in favor of the defendants. Lippincott v. Kelly [Case No. 8,381]. In both those cases exceptions were taken to the opinions of the judges, and motions grounded on those exceptions are pending for a new trial. In May, 1844, another trial at law was had in the Massachusetts circuit, in which a verdict was given for the plaintiff; and on a motion for a new trial, be-

cause of the ruling of the judge to the jury, and also on motion in the same cause for an injunction, the questions of law were fully argued, and the court sustained the verdict, and granted an injunction against the defendant. Washburn v. Gould [Id. 17,214]. This decision was soon followed by awarding injunctions in two other cases, on bills filed therein upon the doctrines settled in the former case. Woodworth v. Sherman [Id. 18,019]; Woodworth v. Cheever [Case unreported].

Admitting these several verdicts emanated from courts co-equal in authority, yet there is a broad distinction in so far as the finding of the jury is supposed to be influenced by the opinion of the court as to the weight of opinion between the ruling of a judge at nisi prius in the hurry of a trial, and most generally upon first impressions, and the after deliberate adjudication of the same judge on the same points, with the aid of argument of counsel and his own researches and reflexion. Before the verdicts in New York and Pennsylvania, though two against one, can overbalance or neutralize that in Massachusetts, it must appear that the jury passed upon the facts under substantially like instructions, or at least without any erroneous impressions or bias as to the law applied to the case.

First as to the verdict at Albany: It would appear upon the proofs that the judge must have been misunderstood by the jury as to the various particulars of his instructions, or that they regarded portions of them as immaterial or not intended to influence their finding. The judge, subsequent to the trial, furnished a written report of his charge to the commissioner of patents, which is to be regarded as representing accurately the instructions he meant to give, and which he deemed important to the issues; yet the affidavits of five of the jurors who sat upon the trial show that they understood him widely differently, and were governed in their verdict by such acceptation of his meaning, because they say they instantly concluded on retiring that, under the rules of law laid down by the judge, they must find for the defendants, and within five minutes returned into court with a verdict for them, without discussing or determining the material facts in issue. The statement of the charge adopted by those jurors embraces matters not included in the report of the judge, and, if stated by him, were doubtless given under such qualifications as, in his opinion, would not influence the verdict, and did not render it material to repeat them in his report, or, which may be equally probable, the jury may have misconceived or misapprehended the remarks of the judge, or possibly have confounded their recollections of the arguments of counsel, with what they supposed were the instructions of the judge. According to Mr. Harris' deposition, which the jurors say gives their recollection of the charge, the judge instructed the jury, upon the question whether the machines used by the defendants were a violation of the patent, that

it appeared there was in them no carriage; that the carriage is an important part of the combination, and, unless used by the defendants, they do not infringe the patent, because, it being for a combination, it is no infringement to use any of the parts of tl ᐧ combination, if the whole combination is not used. The jurors depose that the charge on this point would have alone controlled their verdict, but they were also of opinion that, according to the principles laid down by the judge in his charge, the specification of the machine by Woodworth was insufficient, and that for that reason the patent was invalid. The same jurors had given a previous affidavit, which was read by the defendant, and in that their verdict is put upon the ground that the jury were fully satisfied the patent was invalid for several different reasons, one of which was that Bentham had invented the same machine, and that a full description of it had been published in the 10th volume of the Repertory of Arts in 1799. If there be a conflict in the representations of these two depositions, so as to leave a doubt on the mind whether the jurors decided the case upon their own judgment of the priority of the invention, or were governed by the charge of the judge alone, this court is, at best, bound to credit their assertions, corroborated by the affidavit of the attorney Mr. Harris, who speaks from written notes taken at the time; that they understood the judge to give instructions of the import they have stated; and such direction as to the law being on their minds, it must now be presumed that it had an important influence in determining the verdict rendered by them. The court regrets the frailty of these gentlemen in subscribing and attesting to depositions susceptible of any opposite constructions, and is more solemnly admonished by the occurrence of the hazard of determining important interests on the statements of affidavits taken ex parte, especially when the witness is called to give only impressions or opinions, and not facts passing under his own observation.

In the judge's report of the charge, it is only stated that he submitted to the jury the question of infringement, it being insisted by the defendants that their machine was so essentially different from the patentee's that the use of it did not constitute an infringement of theirs. This is undoubtedly matter of fact to be referred to the jury, but, according to the principles previously laid down by the judge, it became equally his province to decide whether the patentee claimed the carriage as a constituent part of his combination, and it would therefore be highly probable that he would submit his views on that point to the jury, especially as the report at large of the case shows that one ground of defense was that the defendants' machines used no carriage; and if, as Mr. Harris and the jurors accepted it, the charge imported that the defendants were guilty of no violation of the patent in using

the patentee's machines. provided they omitted the carriage. such instruction must have had a material bearing on the determination of the fact whether an infringement had been committed. It does not appear that the case has yet been submitted to the judge for reconsideration, and as both Judges McLean and Story take a different view of the law in relation to this particular in this patent, I shall follow their conclusions that the omission of the carriage in constructing a machine will not protect a party against a charge of infringement of this patent. unless a jury shall have found as matter of fact that the carriage is a constituent and essential part of the combination claimed by the patent.

There are various other points in the charge of the judge yet waiting his review, on a motion for a new trial. and the verdict rendered so promptly after the charge ought not to be held to conclude the patentee's right until the controverted questions of law propounded on the trial shall have been definitely settled.

The same general remarks are applicable to the verdict rendered in Pennsylvania; a motion for a new trial being pending in that court, because of misdirections to the jury on points of law. One point ruled by the judge on that trial is not in consonance with the adjudications of all the other courts. He instructed the jury that the patent was not for a combination, and such instruction must have had the most material bearing with the jury, for, if we may reasonably presume evidence was laid before them similar to that given on every other trial, there could be but slight ground for upholding the patent as for an original invention of the instruments and parts of which the machine was composed. I think, therefore, upon the evidence in relation to those three trials. that I cannot regard the last verdict found at Boston as counterbalanced or impaired by those rendered in the Northern district of New York and the Western district of Pennsylvania.

Looking, then, to the last verdict found, as one rendered after a most searching investigation of the law and facts, and confirmed. after elaborate argument and review by counsel, in a written opinion of the court, I cannot hesitate to regard it as more satisfactory evidence to my mind of the true import and effect of the testimony impugning and supporting the patent than can be deduced from the depositions laid before me. I heard attentively those depositions read in court and the comments of counsel upon them. I have carefully reperused them in my study, and am free to avow that if called upon to adjudge the merits of the cause upon those proofs, I should feel the greatest doubt and uncertainty as to where the real right lies. There is in them an irreconcilable clashing of statements between witnesses as to the priority of the invention of the patentee, as to the sufficiency of the specifica-

tion, as to the utility of the discovery, and as to the violation of the patent by the defendant's machine. Independent of the usual objections to expert affidavits. there is a tone pervading many of these that indicates a partizan feeling, and the witnesses are brought to express themselves with an emphasis and intensity of language that is rarely, if ever. disclosed on oral examinations, or, if exhibited, will commonly be traced to some animosity or bias, affecting materially the credit of the witness; and furthermore. although most of the witnesses on both sides would appear to be men of intelligence, yet they subscribe to merely common forms of depositions, strongly implying that, if they furnish the facts on which the deposition is founded, some one else has supplied the language, and that the court has not before it the views and judgment of the witness communicated precisely as the impression rests on his own mind. No one can fail to appreciate the importance in nicely balanced questions of fact of hearing the witness give his recollections or opinions in his own words with the explanations and corrections suggested by the statements of others in his hearing, or drawn out by the course of examination. I recur, therefore, to the previous intimation that I adopt as more satisfactory the conclusions of a jury on these points, formed from a viva voce examination of witnesses (and very many of them those whose depositions are now before me), than the one I might form myself from a perusal of these numerous and conflicting affidavits; and I shall accordingly accept the verdict on this patent at Boston as determining, prima facie, that the patentee is the first and original inventor; that his specification is not void for ambiguity or want of certainty and distinctness in describing his discovery; that the specification and drawings are sufficient to enable a person skilled in the business to construct the machine patented, and to render it practical and useful; that it will perform the services claimed by the specification; and that the disclaimer of the circular saws was filed within a reasonable time.

I have already intimated that following the decision of Judge Thompson, in respect to what I understand to be substantially, if not incidentally, the same machines used by the defendant, I consider them an infringement of the patentee's right; that they are constructed substantially like his; and that it does not appear from the proofs that the differences introduced into the defendant's machines are such as will support a distinct patent right.

Upon the most essential points of law raised by the defendant, as objections to an injunction, it is sufficient for me in this interlocutory proceeding to state that I regard it the true construction of this patent so far at least as to control this incidental motion for an injunction: That the extension of the patent to the administrator vests a legal and valid title in him. Brooks v. Bicknell [Case

No. 1,944]; Washburn v. Gould [Id. 17,214]. That this right does not inure to the benefit of the assignees of the original patent, they holding no more than a bare assignment of the patent interest as it was when conveyed to them, and their interest being limited to the period of that patent. 2 Story, Append.; Woodworth v. Sherman [Case No. 18,019]. And I am of opinion that the extent to which assignees may enjoy the benefit of a renewed patent is to be determined solely by the stipulations of the assignment. Section 18 of the act of 1836 [5 Stat. 117], only gives effect to the contract between the assignor and assignee in this behalf. That the patent is to be construed as a combination of the various instruments described. so as that, by a common moving form. the various results described in the specification will be performed. Woodworth v. Dit [unreported] N. Y. Cir. Ct., Dec., 1837, Thompson, Circuit Justice, and Betts, District Judge; Gibson v. Gould [supra], Conkling, District Judge; Van Hook v. Scudder [Case No. 16,853], in equity, Thompson, Circuit Judge; Washburn v. Gould [Id. 17,214]. And that the specification and drawings accompanying it sufficiently describe such invention.

And, upon the whole case, I decree in favor of the complainant, and adopt the terms of the order settled by the court in the case of Van Hook v. Scudder, and order it entered in this cause.

The defendant. by his counsel, moves to modify the above order, so as to extend the time to the 20th instant (instead of the 13th), to execute the bond, etc., or, if security is not filed. that no injunction issue, unless the plaintiff files a bond on his part conditioned to indemnify the defendant if on a trial at law the right is found in his favor, or the decision shall be for him on final hearing in this court. This latter bond is moved for on the authority of the order of Judge McLean—Brooks v. Bicknell [supra]—in the case cited in the above opinion. This is a matter in the state practice regulated by positive law, or standing rule of court. 1 Hoff. Ch. Prac. 80; 1 Barb. Ch. Prac. 622. And it is probable that there may be some rule governing the practice in this behalf in the 7th circuit. If not, this is essentially a matter of practice which each court may regulate at its discretion, conforming to the procedures of the state within the circuit, or adopting an independent method for itself. The supreme court has laid down no rule on the subject nor has this court ever adopted one, and in the English chancery, in cases of special injunctions, embracing waste, patent, etc., it is no where intimated by elementary writers of the highest authority that a bond is exacted as a precedent condition to the injunction. 1 Turn & Van, 977, 978; Eden, Inj. 231; 1 Madd. 126, 127. The case of Van Hook v. Scudder [supra], which is made the basis of the decision in this case, and the decree in which is spe-

cifically adopted, was well considered by the late presiding judge, and there no condition of security was imposed on the complainant. In that case, as this, the right of the patentee was directly controverted, and it was insisted, that such right was, at least, rendered doubtful by the proofs. I do not feel disposed to go out of that case, especially as the defendant stands before me as the successor of those defendants. using in effect the machines then enjoined. Upon general principles, when a patentee has set in operation a valuable contrivance, never before brought into public use, I should be disposed to give him the full benefits of the law in upholding his invention, without trammelling him with restrictions, which might exclude him from the courts or enable others of greater wealth to break him down in the controversy. It seems to me it will require grave consideration before the court promulges the rule that a patentee shall not have an injunction against the violation of his discovery whenever a defendant denies the validity of the patent without first furnishing security to pay damages to his adversary in case of failing to sustain his patent. The reasoning against the doctrine will not be suggested on this occasion. I am not satisfied of its equity as a general rule, and I perceive in the peculiar condition of this case nothing requiring its introduction and application at this time. That part of the motion is accordingly denied. I am not willing to vary the terms of the order already granted. The defendant has been informed of it a reasonable time, to provide the security required. But as he is represented to be an indigent man, the court will not allow his pecuniary inability to debar him of the equity secured by the order, and he will accordingly be permitted, at any time within ten days after injunction .served, to give the bond directed, and thus suspend or supersede the operation of the writ.